**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**ANTHONY L. BUCKNER,**

      **Plaintiff,**

*vs.*                               **Civil Action Number 2:04CV75**
                                      **(The Honorable Robert E. Maxwell)**

**TYGART VALLEY CONSTRUCTION, INC.,**

      **Defendant.**

§

## OPINION/REPORT AND RECOMMENDATION

### Procedural History

Plaintiff, Anthony Buckner, filed suit against his former employer, Tygart Valley Construction Inc., on October 12, 2004, alleging he had been racially discriminated against in employment in violation of the Civil Rights Act (42 U.S.C.A. 2000e and the West Virginia Human Rights Act (§5-11-2)).

Defendant timely filed its answer on November 12, 2004, asserting as the Fifth Defense: "The Defendant sets forth affirmatively that the Plaintiff cannot maintain this civil action because he has failed to exhaust all of the administrative remedies available to him." It is undisputed by the parties that Plaintiff's employment with Defendant terminated not later than December 7, 2004.[1] It is also undisputed that Plaintiff did not file an EEOC complaint or a corresponding complaint with the West Virginia Human Rights Commission and that he did not obtain a right to sue letter at anytime prior to or since the filing of the complaint in Federal Court.

Pursuant to the Court's Scheduling Order entered February 28, 2005, the parties engaged in

---

[1]Defendant asserts Plaintiff was laid off on October 4, 2004 and did not take active steps to be re-employed once the seasonal lay off ended.

discovery. It was during this discovery that Defendant failed to respond to certain of Plaintiff's Requests For Admission resulting in the Court Order declaring that the requests not answered or denied were deemed admitted all of which forms the background for Plaintiff's Motion for Summary Judgment filed December 1, 2005 (Docket Entry 28).

On January 3, 2006 Plaintiff filed his Motions in Limine (Docket Entries 29, 30 and 31).

On January 13, 2006 Defendant filed its Motion To Dismiss (Docket Entry 36).

The above motions were referred to the undersigned by Order entered February 15, 2006 (Docket Entry 38). By Order entered by the undersigned on March 15, 2006, said motions were set for hearing and argument on April 20, 2006 at the Elkins point of holding court.

On April 20, 2006 Plaintiff appeared in person and by his counsel. Defendant also appeared by its corporate representative and its counsel.

The undersigned first conducted a F.R.Civ.P. 16 settlement conference with the consent of the parties. Settlement not being achieved, the undersigned proceeded to hear arguments of counsel with respect to the motions.

No evidence was offered other than contained as exhibits and by way of affidavits attached to the motions.

The record of the hearing was closed and the motions were deemed submitted for the preparation of this Opinion / Report and Recommendation.

Post hearing, the undersigned, by separate order, provided counsel for the parties the opportunity to brief additional issues. The briefings were received on May 12, 2006.

## **Pending Motions**

1)    Plaintiff's Motion for Summary Judgment filed December 1, 2005 (Docket Entry 28).

2)      Plaintiff Motions in Limine filed January 3, 2006 (Docket Entries 29, 30 and 31).

3)      Defendant's Motion To Dismiss filed January 13, 2006 (Docket Entry 36).

4)      Plaintiff's Oral Motion To Amend Complaint made April 20, 2006.

# I

## Defendant's Motion To Dismiss

### Contentions of the Parties

Defendant contends that Plaintiff's complaint should be dismissed with prejudice for Plaintiff's failure to exhaust his administrative remedies by filing a complaint with the West Virginia Human Rights Commission or the EEOC within the time limits provided by 42 U.S.C.A. §2000e.

Notwithstanding Plaintiff's admission that he did not file a complaint with either of the administrative agencies, he contends:

1)      exhaustion of administrative remedies is not jurisdictional;

2)      the Court can proceed on a parallel course of litigation even though no claim was made with the administrative agencies and no right to sue letter was obtained prior to or during the pending federal court litigation;

3)      Defendant's admitted conduct was such that it would be inequitable to dismiss Plaintiff's complaint for failure to exhaust; and

4)      Plaintiff is entitled to equitable relief from the exhaustion requirement.

### Jurisdictional Pre-requisite

*Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982), holds: ". . . [T]hat filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and

equitable tolling." *Zipes* involved a class action suit brought by female flight attendants alleging gender bias based on allegations that they were required by TWA to take time off post child birth whereas the male flight attendants who became fathers were not so required. Some of the female flight attendants filed EEOC complaints and some did not. The District Court ruled that filing an EEOC complaint was jurisdictional pre-requisite to filing action in federal court but failure to do so in this particular instance did not prevent the District Court suit from moving forward as to those who had not filed EEOC complaints because TWA had not changed its alleged discriminatory policies. The Court of Appeals agreed that filing an EEOC complaint was a jurisdictional pre-requisite but did not agree with the District Court's continuing tort concept and instead stayed the proceedings. Through arbitration, the case settled. However, to settle the question of whether filing of the EEOC complaint was jurisdictional, the Supreme Court of the United States accepted the case. In reversing the Court of Appeals, the Supreme Court reasoned the legislative history, statutory construction, and the Court's prior decisions all indicated that filing an EEOC complaint and receipt of right to sue letter were not jurisdictional pre-requisites but instead were statutory requirements subject to waiver, estoppel and equitable tolling.

In *Price v. Schwan's Home Services, Inc.,* 2006 WL897721 (W.D.Pa.)(unpublished), Price, a 58 year old three-year employee of Schwan's, was terminated and his position was filled by a less experienced person under the age of 40. Price filed a complaint alleging Title VII violations and violation of the ADEA. Price alleged he filed a Pennsylvania Human Rights Commission (PHRC) complaint but did not obtain a right to sue letter. Schwan's moved for dismissal pursuant to F.R.Civ.P. 12(b)(6) contending that Price did not get a right to sue letter; the Title VII claims were not made to the PHRC; and his Title VII and ADEA claims were not timely filed with either the

EEOC or PHRC.

Granting Schwan's motion with respect to Price's Title VII claims, the District Court held: "Filing a timely complaint with the PHRC and/or the EEOC is a precondition to filing a complaint in federal court. 'The timely exhaustion of administrative remedies is a precondition to the maintenance of a federal employment discrimination civil lawsuit.'" (internal citations omitted).

In *Hawkins v. Defense Logistics Agency of the Department of Defense*, 99 F.3d 1149 (10th Cir. 1996)(unpublished),Hawkins was RIF'ed from his employment with Defense Logistics Agency. He claimed the RIF had a disparate impact on disabled employees such as himself. While prosecuting his administrative claim for the alleged discrimination, Hawkins filed an injunctive proceeding in Federal Court seeking to ameliorate potential adverse personnel actions while his case wound through the administrative process. The District Court dismissed the injunction proceeding.

Affirming, the Court of Appeals held: "This circuit deems the exhaustion of administrative remedies to be a prerequisite to federal court jurisdiction - - whether invoked for legal or, as here, strictly equitable relief - - in statutory discrimination cases."

Responding in a footnote to Hawkins argument that *Zipes, supra*, held exhaustion was not a jurisdictional prerequisite, the Court noted: "*Zipes* held only that the timeliness requirement for administration charges is, like a statute of limitations, subject to such equitable exceptions as waiver, estoppel, and tolling. That holding does not undercut this Court's exhaustion rule - - adhered to before and after *Zipes* - - that the administrative process must still be pursued before jurisdiction in federal court can be invoked."

In *Capruso v. Hartford Financial Services Group, Inc.* 2003 WL 1872653 (S.D.N.Y.)(unpublished),Capruso filed her Title VII and corresponding state claims in state court

alleging gender based discrimination without first filing and exhausting her state or federal administrative remedies (EEOC). Hartford removed the case to the federal court. After a year and a half of litigation, Hartford moved for summary judgment in part asserting Capruso had failed to file her Title VII claims with the EEOC prior to bringing the suit.

In granting summary judgment, the Court held: "The exhaustion of administrative remedies is an essential element of Title VII's statutory scheme, and the failure to file with the EEOC and receive a right-to-sue letter is a sufficient ground for dismissal of a plaintiff's Title VII claims."

In *Burton v. District of Columbia*, 835 A.2d 1076 (DCCA 2003), Burton brought action against the District of Columbia for constructive discharge from employment as a police officer. During the trial of the case, the District moved to dismiss for failure to exhaust administrative remedies provided by District of Columbia Government Comprehensive Merit Personnel Act (CMPA). The Court granted the same holding: ". . . [T]he exhaustion doctrine is well established and of long standing, both in CMPA cases and generally, that doctrine is simply a 'rule of judicial administration' rather than a jurisdictional requirement. . . . [T]he Supreme Court has made it clear that exhaustion is not a 'jurisdictional prerequisite' to a court proceeding, but merely a requirement 'analogous to a statute of limitations' which is subject to waiver, estoppel, or other mitigating factors." (internal citations omitted).

In *Brown v. General Electric Company*, 1995 WL 340748 (N.D.N.Y.)(unpublished), Brown sued General Electric Company claiming age discrimination and a Title VII violation as a result of her having been selected for layoff when others, younger and older, were kept on the payroll. Brown did not obtain a right to sue letter.

In dismissing Brown's claims, the Court held: "[I]n order to bring an action under Title VII,

a Plaintiff must first obtain a right to sue letter. With respect to whether a right to sue letter was a jurisdictional prerequisite under *Zipes*, *supra*, the Court stated: "Whether treated as a matter of jurisdiction or as a statutory condition precedent; however, plaintiff's unexplained failure to obtain a right to sue letter requires dismissal without prejudice."

Whether a jurisdictional pre-requisite, a condition precedent, a requirement analogous to a statute of limitations, a rule of judicial administration, or pre-condition to filing, it is well established that plaintiff must first exhaust his administrative remedies and obtain a right to sue letter prior to instituting a Title VII action. Failure to do so may result in dismissal of the action unless there is some equitable reason not to do so.

In the instant case, it is undisputed that Buckner did not file a claim with either EEOC or with the West Virginia Human Rights Commission and he did not obtain a right to sue letter. Buckner's admitted last day of work constitutes the last day of discrimination. Notwithstanding the merits of Buckner's claims, absent some judicially recognized equitable reason for not exhausting his administrative remedies or a waiver of exhaustion by Defendant, those claims are subject to dismissal.

**Waiver**

*Capruso, supra*, afforded the District Court the opportunity to address the question of whether removal of the claim to federal court and, thereafter, litigating for more than a year before moving for summary judgment was sufficient to constitute Defendant's waiver of Plaintiff's obligation to exhaust. The Court held: "Hartford raised the issue of exhaustion of administrative remedies in both its answer and its motion for summary judgment. Under these circumstances it cannot be said that a waiver occurred."

The D.C. Court of Appeals addressing Burton's challenge to the right of the court to entertain the District's motion once the final pretrial order had been entered without reference to the exhaustion of remedies defense noted: "In the case at bar, however, appellant was on notice that the exhaustion issue could arise at trial when the District raised it as a defense in its answer." Finding that the District had included the defense in its answer, the Court found that Burton could not be prejudiced by the fact that the District did not assert the issue again until trial. *Burton v. District of Columbia*, *supra*.

These cases are not authoritative precedent. However, as in *Capruso* and *Burton*, Tygart Valley Construction timely filed its answer on November 12, 2004, asserting as the Fifth Defense: "The Defendant sets forth affirmatively that the Plaintiff cannot maintain this civil action because he has failed to exhaust all of the administrative remedies available to him." This was actual notice of Plaintiff's failure to exhaust his administrative remedies with the state agency and EEOC. Plaintiff pursued the federal law suit at his peril while the Defendant patiently waited for the three-hundred days to run from the date of Plaintiff's last employ, perceiving that the the be the last date Plaintiff could have been subjected to racial discrimination in the work place. Once the three-hundred days had elapsed and it was determined Plaintiff had not in the interim filed an EEOC or state agency claim, a fact not in dispute between the parties, Defendant filed and prosecuted this motion to dismiss. Nothing Tygart did prevented Buckner from filing his EEOC or state agency claim in the time period that elapsed between the filing of the within federal lawsuit and the expiration of the statutory right to file said claims.

**Estoppel**

*Burton v. District of Columbia*, *supra* at 1080, citing a long line of cases, held that failure

to exhaust administrative remedies attributable to lack of knowledge of the process was not a compelling circumstance justifying equitable relief. While there is no set rule or formula for identifying such compelling circumstances, "a lack of fault on the part of the claimant is a necessary prerequisite."

In *Capruso v. Hartford Financial Services Group, Inc., supra,* the Court declined to invoke its equity powers under *authority provided in Zipes v. Trans World Airlines*, 455 U.S. 385 (1982) because Capruso was an attorney and had received the assistance of an attorney in handling of her claims. The Court also noted that Capruso did not explain her failure to comply with the statutory requirements following a prior ruling, *Kirkland v. Bianco*, 595 F.Supp. 797, 799 (S.D.N.Y.1984), that "equitable modification is inappropriate where a plaintiff completely fails to file with the EEOC or allege with specificity in her complaint her reasons for the failure."

The District Court in *Price v. Schwan's Home Services, Inc.*, *supra,* refusing to apply the equitable tolling language of *Zipes, supra,* held with respect to equitable tolling: ". . . Plaintiff is not entitled to the requested equitable tolling of the statute of limitations to allow him to refile with the PHRC and/or the EEOC. To be entitled to equitable tolling, the Plaintiff is required to show that '[he was] prevented from filing in a timely manner due to sufficiently inequitable circumstances.' ... Mere inadvertence of counsel is not enough. . . . For an attorney's mistake or misconduct to constitute grounds for equitable tolling, it must be shown that the attorney's mistake or misconduct was more than garden variety neglect.'"

Again, while these cases are not authority binding on this Court, they are instructive. Buckner offered no explanation for his failure to file the EEOC complaint. At the hearing, counsel merely stated that in retrospect, he wished he had timely filed an EEOC complaint. At worst, the

failure is the garden variety neglect mentioned in *Price*.

Even after Buckner was put on notice by Tygart's Fifth Defense set out in its answer filed November 12, 2004, neither he or his counsel filed an EEOC complaint within three-hundred days of the December 7, 2004, termination of Buckner's employment. There is not one scintilla of evidence offered to suggest someone prevented or in any way caused Buckner and/or his counsel to not exhaust the administrative remedy that was available.

**Parallel Course**

Both parties conceded during the hearing that after filing the federal court action, Buckner could have timely filed and pursued an EEOC complaint. However, Buckner cites no case and the undersigned was unable to find any case in which a claimant was permitted to file an out-of-time EEOC complaint in order to prevent dismissal of a court action for un-excused failure to exhaust administrative remedies.

Buckner has not offered the undersigned a single authority supporting ignoring his failure to exhaust on the basis that Tygart admitted requests for admission thereby establishing the necessary elements of his racial discrimination claim. Absent such authority, the undersigned is unwilling to entertain such a novel concept. To do so would be to dispense with the administrative process Congress established to quickly resolve claims of discrimination in employment without resort to the courts.

**II**

**Oral Motion To Amend**

**Amendment of Plaintiff's Complaint to Assert § 1981 Claims**

**Amendment To Prevent Dismissal**

As an alternative to dismissal of his claims, Buckner, without filing a formal written motion to amend or a copy of the proposed amended complaint, orally and in his written memorandum in response to Defendant's Motion To Dismiss, seeks leave of Court to amend his complaint to assert a §1981 discrimination claim. Plaintiff contends that a §1981 claim contains the same required elements as a §1983 claim but is not subject to exhaustion by filing an EEOC claim.

But for Plaintiff's motion in the case *sub judice* being orally made during argument of Defendant's Motion to Dismiss and after it became apparent that the undersigned may recommend dismissal of the Title VII claims for failure to exhaust administrative remedies, there would be little or no issue to the propriety of permitting the proposed amendment. Concerned with the motion being made so late in the pre-trial process and outside of the time for amendment provided by the Court's scheduling order, the undersigned ordered additional briefing on the following specific issues:

1) The authority of the Court, discretionary or otherwise, to grant leave to amend Plaintiff's complaint to allege a §1981 Civil Rights case (exclude F.R.Civ.P. 15(a)).

2) How are the elements of a §1981 claim the same or different than the Title VII claim asserted by Plaintiff in the original complaint?

3) Would additional discovery be required if Plaintiff were granted leave to amend to allege a §1981 claim?

4) What elements of damage, if any, are different in a §1981 claim from the Title VII claim asserted by Plaintiff in the original complaint?

5) What is the statute of limitations on §1981 claims, that are proposed by Plaintiff, based upon facts asserted in the original claim?

6) Is the burden of proof, in any way, changed by granting leave to assert a §1981 claim as opposed to a Title VII claim?

7) What, if any, exhaustion of administrative remedies is required for the prosecution of a §1981 claim?

**FRCivP15(a)**

F.R.Civ.P. 15(a) in pertinent part provides:

A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. **Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.** (emphasis added by the undersigned).

"This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities. *Labor v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) citing: *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."); *Ostrzenski v. Seigel*, 177 F.3d 245, 252-53 (4th Cir. 1999)("The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that [the] plaintiff be given every opportunity to cure a formal defect in his pleading.").

The Fourth Circuit has adopted the following three-part test for use in exercising discretion provided under FRCivP 15(a) to deny leave to amend:

1) "when the amendment would be prejudicial to the opposing party"; or

2) when "there has been bad faith on the part of the moving party"; or

3) when "the amendment would have been futile."

*Labor, supra* at 426 citing *Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) and (*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

**Prejudice**

Prejudice is determined by the nature of the amendment and its timing. In *Foman,* the Supreme Court held a prejudicial amendment is one that "raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial." *Id.*

In *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980), the Court of Appeals held "[b]ecause defendant was from the outset made fully aware of the events giving rise to the action, an allowance of the amendment could not in any way prejudice the preparation of defendant's case." The pilot, his wife and one passenger were killed on take off of a Piper airplane in North Carolina. Wrongful death cases were filed and adverse judgments obtained in two jurisdictions outside of North Carolina. Within five days of the running of the statute of limitations, Davis filed his decedent's claim in North Carolina. Davis was not qualified as the personal representative of his decedent in North Carolina at the time of filing. Five months later, Defendant moved to dismiss, citing that Plaintiff was not qualified to file the action under North Carolina law. Four months later, Plaintiff moved to amend to reflect his appointment as ancillary administrator on July 6, 1977. The District Court denied the motion to amend. On appeal, the Fourth Circuit reversed holding: "[I]n denying leave to amend under the federal rules the District Court abused its discretion, and for this reason we reverse and remand." After addressing the relation back conflict existing between the Federal Rule (15(c)) and State corresponding rule, an analysis that is unnecessary to the within decision, the Fourth Circuit explained that:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. the leave

sought should, as the rules require, be "freely given." *Id.*

The Court of Appeals determined that the District Court had not found prejudice to the Defendant by the dilatory motion to amend. While the District Court did find that the motion was dilatory (delayed) within one of the prongs of *Foman*, the Fourth Circuit held:

> Delay alone however, without any specifically resulting prejudice, or any obvious design by dilatoriness to harass the opponent, should not suffice as reason for denial. See generally 6 Wright and Miller, Federal Practice & Procedure: Civil s 1488, at 438. We do not think the delay here suffices. In any event, considering the pace already set by the defendant's delay of some five months in filing answer to the original complaint and the necessity for plaintiff's qualification in North Carolina before amendment could be sought, the delay seems not undue aside from prejudice.

> While Foman's enumeration of factors cannot be thought exclusive, they do embody a principle which focuses on prejudice or futility or bad faith as the only legitimate concerns in denying leave to amend, since only these truly relate to protection of the judicial system or other litigants. *Id.*

In the instant case, Defendant asserts that the delay in filing for an amendment is equivalent to a post judgment amendment because the amendment was sought in anticipation of a judgment of dismissal. While Plaintiff may have realized his case may be in trouble and would likely be dismissed, the fact is, as of the oral motion to amend, no judgment of dismissal had been issued and the case was not pending an immediate trial date. So the language of *Labor* that the District Court's discretion to allow amendments "narrows considerably after entry of a judgment" is inapplicable. *Supra,* at 433. Defendant asserts no "specifically resulting prejudice" nor does Defendant assert "any obvious design by dilatoriness to harass the opponent" by Plaintiff's delay in the filing of the request to amend. Other than the bare assertion of delay, Defendant does not assert that it will suffer any actual prejudice if Plaintiff is permitted to amend his complaint. Such a coupling of prejudice with delay is required. There is affirmative evidence of no prejudice. That evidence is

Defendant's acknowledgment that the West Virginia statute of limitations on Plaintiff's §1981 claim does not run until two years from October 12, 2004 [October 12, 2006] and it's acknowledgment that, provided he [Plaintiff] "does not invoke the jurisdiction of the West Virginia Human Rights Commission, he is free to file a Court action within the West Virginia two year statute of limitations" citing *Harmon v. Higgins*, 426 S.E.2d 344 (WV 1992). (Defendant's Reply And Authorities To Issues Presented By Order Of The Court, Docket Entry 44, p. 5.)

In addition, Defendant engaged in no discovery in the within action. This may have been a strategy based on early awareness that Plaintiff had not exhausted his administrative remedies and the desire to not alert Plaintiff to his error until the statutory time to file an EEOC complaint had expired. Whatever the motivation for the failure to engage in discovery, Defendant cannot claim prejudice for its own failure. On the other hand, Plaintiff did engage in discovery by taking depositions, filing interrogatories, requests for production and requests for admission and seeking Court sanctions in the form of court-ordered admissions when the Defendant failed to file responses. This provided Defendant with valuable insight into Plaintiff's proof relative to his Title II claims, preventing Defendant from now claiming surprise with respect to the elements of those claims that are common to the §1981 claim Plaintiff now seeks to assert on the same facts. To dismiss the case without permitting Plaintiff to amend would waste that discovery already completed. As in *Labor*, the assertion of a §1981 claim will "not put new facts at issue but merely states an 'alternative theory' for recovery." *Supra,* at 227.

Defendant implies Plaintiff failed to allege a contract of employment in his Title VII complaint. Defendant asserts Plaintiff must allege such a contract of employment to sustain a §1981 action and with such an allegation, additional discovery will be required. Defendant appears to

ignore *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018-1019 (4th Cir. 1999), in which it was decided that dismissal of a §1981 complaint was in error because: "an at will employment relationship is contractual in nature . . . such relationships may therefore serve as predicate contracts for §1981 claims." There is no factual dispute that Buckner was employed by Defendant. For the issues now before the undersigned, it does not matter whether Buckner's employment with Defendant was governed by an expressed or implied contract or whether he was an employee at will. In any event, for §1981 purposes, his employment relationship was contractual in nature.

Citing *Spriggs II,* Plaintiff asserts that the elements of a Title VII hostile work environment claim are identical to a §1981 hostile work environment claim. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183-184 (4th Cir. 2001).

With respect to costs [attorney fees] in response to the undersigned's question: "What elements of damages, if any, are different in a §1981 claim from the Title VII claim asserted by the Plaintiff in the original complaint?," Defendant responded: "A §1981 action does not contain a statutory provision for attorney fees and costs." (Defendant's Reply And Authorities To Issues Presented By Order Of The Court, Docket Entry 44, p. 4.) Plaintiff responded stating that, in addition to other damages, "a party with a §1981 cause of action can be awarded attorney's fees (including expert fees) as set forth under 42 U.S.C. § 1988." (Plaintiff Anthony Buckner's, Memorandum Of Law In Response To Order Entered April 28, 2006, Docket Entry 45, p. 13.) The issue of whether Plaintiff may receive attorneys fees and costs is not directly before the undersigned for decision. From Defendant's failure to engage in discovery and the Plaintiff's discovery being applicable to those elements of a §1981 claim that are common with a Title VII claim, the undersigned concludes the only prejudice from a cost standpoint is the possibility that Plaintiff, by

virtue of his inability to now pursue a Title VII claim, may forfeit his claims for attorney fees and costs. The Defendant is in no worse shape under a §1981 claim if he is ultimately held to pay attorneys fees and costs because he was exposed to that possibility under the Title VII claim.

No assertion in writing or during oral argument has been made that Plaintiff's failure to sooner file for leave to amend his complaint was motivated by bad faith. From the arguments made during the hearing, the undersigned concludes that failure to exhaust and failure to recognize that exhaustion was required in a Title VII claim was a mistake of counsel born out of lack of understanding and knowledge and not born out of bad faith or impure motive as contemplated by *Labor, supra* at 426.

Defendant states: "The amendment sought in this case is also futile as set forth in the reply to the Court's ISSUE 2." (Defendant's Reply And Authorities To Issues Presented By Order Of The Court, Docket Entry 44, p. 2.) In the response to ISSUE 2, Defendant points to what burdens of proof may be required in a §1981 case as opposed to a Title VII case and what elements of a §1981 cause of action Plaintiff failed to aver in his original complaint. Defendant does not identify how the proposed filing of the §1981 claim would be futile. It appears Defendant is contending Plaintiff will not be able to sustain his burden of proof if permitted to amend. That is not a proper consideration in deciding a FRCivP 15(a) motion.

> Unless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations, see, e. g., *DeLoach v. Woodley* 405 F.2d 496, 497 (5th Cir. 1968), conjecture about the merits of the litigation should not enter into the decision whether to allow amendment. *Davis*, *supra* at 613.

FRCivP 16(b)

FRCivP 16(b) provides in pertinent part:

> Except in categories of actions exempted by district court rule as inappropriate, the district judge, or a magistrate judge when authorized by district court rule, shall, after receiving the report from the parties under Rule 26(f0 or after consulting with the attorneys for the parties and any unrepresented parties by a scheduling conference, telephone, mail, or other suitable means, enter a scheduling order that limits the time (1) to join other parties and to amend the pleadings ... A schedule shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, a magistrate judge.

The Court issued an initial scheduling order on February 28, 2005, setting the time for amending pleadings and joinder of parties for April 11, 2005. (Docket Entry 7.) No amendments to the Court's scheduling order have been made.

Leave to file an amended complaint outside of the scheduling order was addressed by the Fourth Circuit in *Wall v. Fruehauf Trailer Services, Incorporated*, 123 Fed. Appx 572 (unpublished) (2005). While not dispositive or binding, it is considered by the undersigned as instructive. Wall filed a state court action claiming Fruehauf had improperly docked his commissions in violation of the South Carolina Payment of Post-Termination Claims to Sales Representatives Act (Act). Fruehauf removed the case to federal court. The Court issued a scheduling order. After discovery concluded under the scheduling order and long after the deadline for amending pleadings had expired, Wall, recognizing that portions of his claims were not recoverable under the Act because he had engaged in some direct sales to ultimate consumers, sought leave to amend his complaint a second time and to replace his claim with a cause of action alleging a violation of the South Carolina Payment of Wages Act. The Court granted the motion, reopened discovery and ordered Wall to pay all of Fruehauf's discovery costs associated with investigating the amended claim. A year after the amendment, the case went to trial resulting in a jury verdict in favor of Walls which was later subjected by the Court to treble damages, attorneys fees and costs.

Defendant, Fruehauf, appealed contending the District Court erred and prejudiced Defendant

in permitting Wall to file a second amended complaint after the close of discovery and after Wall admitted that he could not prove the elements of the claim in his amended complaint without establishing good cause in violation of FRCivP 16(b) and 15(a).  Sitting by designation, District Judge Titus, wrote:

> This Court has noted that scheduling orders 'are not set in stone, but may be relaxed for good cause, extraordinary circumstances, or in the interest of justice.' *Barwick v. Celotex Corp.*, 736 F.2d 946, 954 (4th Cir. 1984).  Federal Rule of Civil Procedure 15(a) provides that after a responsive pleading has been served, a party may amend its pleading 'only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.'  Furthermore, leave to amend is a liberal standard and will not be denied unless the amendment will cause actual prejudice to the adverse party.  See *Ward Elecs. Serv., Inc. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir. 1987) (holding that a change in the theory of recovery and one prior amendment is not sufficient to deny a motion to amend the complaint where no evidence of bad faith existed).  Here, the District Court properly exercised its discretion in determining that good cause existed to permit Wall to amend his complaint, pursuant to Federal Rules of Civil Procedure 16(b) and 15(a). Wall moved to file a Second Amended Complaint immediately after his counsel learned that a minor portion of his sales activities involved selling trailers to independent owners/operators, an activity that is not covered under S.C.Code Ann. § 39-65-10.  Furthermore, Fruehauf did not suffer any prejudice as a result of the amendment.  The trial court reopened discovery, permitting Fruehauf to depose Wall a second time, and ordered Wall to pay all of Fruehauf's associated discovery costs.  Moreover, the amendment did not substantively change the claim, only the statute under which the claim proceeded.  Both before and after the amendment, the suit was a claim for the same unpaid commissions.  Principles of judicial economy would have been sacrificed had Wall not been permitted to amend his complaint because it would have forced Wall to litigate an entirely new and separate action based on the same set of facts under the new statute.  *Rowe v. United States Fid. & Guar. Co.*, 421 F.2d 937, 943 (4th Cir. 1970)('the fact that the supplemental pleading technically states a new cause of action should not be a bar to its allowance.')

Based on the within analysis and believing that substantial justice demands the hereinafter recommended relief, the undersigned concludes:

1)      Buckner's proposed §1981 claims arise out of the same set of facts (alleged racial discrimination in employment) as his current Title VII claim.

2)     If Buckner's oral motion to amend to file an amended complaint alleging §1981 claims were to be denied and his Title VII complaint were to be dismissed for failure to exhaust his administrative remedies, Buckner would have to timely start a new civil action alleging his §1981 claims resulting in waste of valuable judicial resources.

3)     There is no prejudice to Defendant by permitting Buckner to amend and thereby allow his §1981 claims to supersede his earlier filed Title VII claims.

4)     Claims under the proposed amendment may differ with respect to some defenses and damages and accordingly additional discovery may be required.

5)     Should Plaintiff assert a retaliatory discharge claim in his amended complaint, since such claim was not made a part of his original claims and the Defendant did not have the opportunity under the Court's original discovery order to conduct discovery with respect to that issue, the costs for such additional discovery incurred by the Defendant as a result of the such a claim may be ameliorated by requiring Buckner to be responsible for the same.

6)     Defendant had reasonable opportunity for discovery under the Court's original scheduling order with respect to the elements of the Title VII  racial discrimination in employment claims which are substantially the same as, if not identical to, those claims under §1981. Therefore, Plaintiff is not responsible for any additional discovery Defendant may want to take with respect to those claims.

7)     Additional discovery should be limited in duration but not with respect to the legal and factual issues raised by Plaintiff's amended complaint.

8)     Granting of Plaintiff's oral motion to amend his complaint renders Plaintiff's motion for Summary Judgment premature inasmuch as additional discovery may be warranted.

9)	Granting of Plaintiff's oral motion to amend his complaint renders Plaintiff's Motions in Limine premature inasmuch as additional discovery may be warranted.

<u>**Recommendation**</u>

For the reasons stated herein, it is **RECOMMENDED** that the District Court exercise its discretionary authority as follows**:**

1)	**GRANT** Plaintiff's oral motion seeking leave to amend his complaint to assert a §1981 claim as follows:

a)	Within ten (10) calendar days of any order granting Plaintiff's oral motion seeking leave to amend his complaint to assert a §1981 claim, Plaintiff be required to file and serve the same on Defendant.

b)	Such amended complaint once filed be deemed by the Court's Order to supersede the original Title VII complaint Plaintiff filed to initiate the within civil action.

c)	Within twenty (20) calendar days of the date Plaintiff serves any such amended or superseding complaint on Defendant's counsel of record, Defendant be required to file its answer or responsive pleading thereto.

d)	Discovery be reopened with respect to the claims asserted in Plaintiff's amended or superseding complaint for a period not to exceed sixty (60) calendar days from the date of the filing thereof.

e)	Plaintiff be required to pay all costs of any additional discovery sought by Defendant on the issue of retaliatory discharge should the same be asserted by Plaintiff in his amended or superseding complaint.

f)	The District Court enter a new scheduling order setting dates certain for the

following events post cut off of additional discovery:

i) Dispositive motions and motions in limine;

ii) Submission of proposed final pretrial order;

iii) Submission of proposed list of trial exhibits;

iv) Submission of proposed witness lists;

v) Submission of proposed additions to the Court's jury charge;

vi) Submission of proposed voir dire;

vii) Final pre-trial conference; and

viii) Trial commencement and jury selection date.

2) **DENY, WITHOUT PREJUDICE,** Defendant's Motion To Dismiss filed January 13, 2006 (Docket Entry 36)**,** the same having been rendered moot by the Court's granting of Plaintiff's oral motion to amend or supersede his original complaint to assert a §1981 claim.

3) **DENY, WITHOUT PREJUDICE,** Plaintiff Motions in Limine, filed January 3, 2006 (Docket Entries 29, 30 and 31), the same having been rendered pre-mature by the Court's granting of Plaintiff's oral motion to amend or supersede his original complaint to assert a §1981 claim and by the re-opening of discovery.

4) **DENY, WITHOUT PREJUDICE,** Plaintiff's Motion for Summary Judgment, filed December 1, 2005 (Docket Entry 28), the same having been rendered pre-mature by the Court's granting of Plaintiff's oral motion to amend or supersede his original complaint to assert a §1981 claim and by the re-opening of discovery.

Any party may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the

Report and Recommendation to which objection is made, and the basis for such objection. A copy

of such objections should also be submitted to the Honorable Robert E. Maxwell, United States

District Judge. Failure to timely file objections to the Report and Recommendation set forth above

will result in waiver of the right to appeal from a judgment of this Court based upon such report and

recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984),

cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn,

474 U.S. 140 (1985).

The District Clerk for the United States District Court for the Northern District of West

Virginia is directed to provide a copy of this order to all counsel of record.

DATED: May 19, 2006

/s *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE