**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**ANTHONY L.  BUCKNER,**

   **Plaintiff,**

*vs*.          **Civil Action Number 2:04CV75
               (The Honorable Robert E.  Maxwell)**

**TYGART VALLEY CONSTRUCTION, INC.,**

   **Defendant.**

## OPINION/REPORT AND RECOMMENDATION

### Procedural History

Plaintiff, Anthony Buckner, filed suit against his former employer, Tygart Valley Construction, Inc., on October 12, 2004, alleging he had been discriminated against in employment due to race, in violation of the Civil Rights Act (42 U.S.C.A. 2000e)  and the West Virginia Human Rights Act (§5-11-2), hereinafter referred to as the §1983 case.

Defendant timely filed its answer on November 12, 2004, asserting as the Fifth Defense: "[T]hat the Plaintiff cannot maintain this civil action because he has failed to exhaust all of the administrative remedies available to him."  It is undisputed by the parties that Plaintiff's employment with Defendant terminated not later than December 7, 2004.[1]

Pursuant to the Court's original Scheduling Order (Docket Entry 7) entered February 28, 2005, the parties engaged in discovery.  It was during this discovery that Defendant failed to respond to Plaintiff's Requests For Admission resulting in a Court Order declaring that the requests not

---

[1] Defendant asserts Plaintiff was laid off on December 2, 2004.

answered or denied ***were deemed admitted***[2] all of which forms the background for Plaintiff's original

Motion for Summary Judgment, filed December 1, 2005 (Docket Entry 28).

On January 3, 2006, Plaintiff filed his Motions in Limine (Docket Entries 29, 30 and 31).

On January 13, 2006, Defendant filed its Motion To Dismiss (Docket Entry 36).

The above motions were referred to the me by Order entered February 15, 2006 (Docket

Entry 38).  By Order entered on March 15, 2006, said motions were set for hearing and argument on

April 20, 2006, at the Elkins point of holding court.

By Amended Report and Recommendation filed May 22, 2006 (Docket Entry 46), I

recommended Plaintiff's original §1983 claim be dismissed for failure to exhaust administrative

remedies and that Plaintiff be granted leave to file an amended complaint asserting §1981 claims.

By Order dated July 12, 2006, the District Judge adopted the Amended Report and

Recommendation and granted Plaintiff's oral motion for leave to amend (Docket Entry 48).

Plaintiff filed his amended complaint (Docket Entry 49) on July 21, 2006, alleging one count

of racial discrimination in the workplace creating a hostile work environment in violation of §1981

and one count of retaliatory discharge.   Defendant filed its answer on August 7, 2006 (Docket Entry

50).

The District Judge entered a new scheduling order (Docket Entry 51) establishing close of

discovery by September 19, 2006, and a final pre-trial conference on March 6, 2007.  The order also

---

[2] Defendant intentionally or unintentionally did not avail itself of FRCivP36(b) which in pertinent part provides: "Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission.  Subject to the provision of Rule 16 governing amendment of a pre-trial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits."

directed dispositive motions be filed by January 8, 2007, and motions in limine be filed by February 12, 2007.

On January 8, 2007, Plaintiff filed his Second Motion for Partial Summary Judgment (Docket Entry 56) and Defendant filed its Motion for Summary Judgment (Docket Entry 57, 60 and 63). On January 22, 2007, Defendant filed its Response (Docket Entry 65) and Plaintiff filed his Response (Docket Entry 66).

By Order dated January 10, 2007, Plaintiff's Second Motion for Partial Summary Judgment and Defendant's Motion for Summary Judgment were each referred to me for recommended disposition.

By Order dated January 11, 2007, the matter was scheduled for mediation on February 20, 2007.

On February 13, 2007, Plaintiff filed his Renewed Motion In Limine (Docket Entry 70 renewing Docket Entries 30, 31 and 29).

By order dated February 14, 2007, the District Judge referred the Renewed Motion In Limine to me for recommended disposition (Docket Entry 72).

The mediation of February 20, 2007, was not successful.

By Notice dated February 21, 2007, the Motion for Summary Judgment (Docket Entry 57, 60 and 63) and the Second Motion for Partial Summary Judgment (Docket Entry 56) were set for hearing on February 28, 2007.

On February 28, 2007, I expanded the hearing to include Plaintiff's Renewed Motion in Limine (Docket Entry 70) for consideration.

No evidence was presented at the hearing in support of the motions pending consideration.

The parties did present oral argument in support of the briefings. Defendant's request to supplement the record with the full transcript of the deposition of Dennis Eisenacher was granted, provided the same was delivered to the Court by the close of business on March 1, 2007. The transcript was not filed.[3] Upon the conclusion of all which, the matter was deemed submitted for the preparation of this opinion/report and recommendation.

## Pending Motions

1) Plaintiff's Second Motion for Partial Summary Judgment filed January 8, 2007 (Docket Entry 56), which was withdrawn by counsel for Plaintiff during the argument.

2) Plaintiff's Renewed Motions in Limine, filed February 13, 2007 (Docket Entry 70 renewing Docket Entries 29, 30 and 31).

3) Defendant's Motion For Summary Judgment (Docket Entry 57, 60 and 63).

## Statement Of Facts

Plaintiff, Anthony Buckner, was hired to work for Defendant, Tygart Valley Construction, Inc. (Tygart), on September 17, 2003. Tygart was engaged in the construction of buildings and the remodeling of buildings in the Snowshoe Mountain area. Between 2003 and 2004, Tygart employed between 35 and 45 employees. Buckner was hired by James Norman Weese. Weese is the sole owner and stockholder of Tygart. At the time of Buckner's employment with Tygart, he was the only African - American employee.[4]

---

[3]Although Defendant did not file a copy of the Eisenacher deposition as offered, I was able to locate and use a copy of the deposition that had been filed as an exhibit to the first round of dispositive motions in the §1983 case.

[4]Since Buckner's layoff, Tygart employed its owner's (Weese's) girlfriend, Heather Collins, an African American, as a part time parts and materials runner. (Docket Entry 61, Dep. p. 7-8).

Buckner did not drive, so he rode to and from work with fellow employee, Dennis Wegman.

Buckner presented himself as a painter and was initially assigned to the painting crew. After receiving complaints from Mike Cogar, the employee running the paint crew, Buckner was transferred to the labor crew. Buckner's work on the labor crew was deemed good and there were no complaints by management.

Buckner was supervised by four (4) or five (5) foremen. Depending on where he was working at any given point in time, some of the foremen were: Johnny Fletcher, Larry LNU and Kevin Weatherholt The superintendent was Dennis Eisenacher. Eisenacher believed he had the power to discipline employees. He also guessed he had the power to terminate an employee although he said he never had any reason to discipline. However, if Buckner had any issue pertaining to his employment or pay, he took it up directly with Weese.

Within the first four days of Buckner's employment, Buckner alleges Eisenacher told him: "I have a colored televison and a black dog at home." At other unknown times during his employment with Tygart, Buckner says that Eisenacher made statements such as: "an employee would wet your [Buckner's] lips and stick you to the wall"; Eisenacher "put a hood over his head and pulled out a 9 mm pistol in a gang member maneuver"; "consistently asked [him] about the Michael Jackson case"; "discussed the Kobe Bryant case to [him]"; and told him "you were hired because of your race." Of these statements, Buckner reported none to his other supervisors. Of these statements, Buckner only reported to Weese that he was asked by Eisenacher about the Kobe Bryant case. Buckner also alleges Johnny Fletcher, a foreman, "suggested that [Buckner] could kill people the way O.J. Simpson did." Buckner did not report that statement to any of his other supervisors or to Weese. Eisenacher denies he made any racial statements and any of the specific statements

attributed to him by Buckner. Weese admits that Buckner told him of Eisenacher asking him about the Kobe Bryant case after word got out that Buckner was planning to sue the company and Weese went to Buckner to find out why. This was near the end of Buckner's employment with Tygart.

Between November and December 2004, Tygart was finished with four out of eight buildings it had under construction, was coming to the end of the project and did not need laborers and some carpenters. Weese made the decision to layoff some of Tygart's employees. He first laid off approximately eight employees. Dennis Wegman was laid off in the first group of eight. Buckner went to Weese and asked if he was being laid off too. Weese told him he was not.

Buckner lost his ride to and from work when Wegman was laid off. Wegman told Buckner that he [Wegman] had been laid off in order to get rid of Buckner. Buckner found another ride to and from work with Larry LNU.

A couple of weeks later, Weese laid off three more Tygart employees. This lay off included Buckner. Buckner's last day of work for Tygart was December 2, 2004. On the way off the mountain, Larry LNU, described by Buckner as a foreman, told Buckner: "Tony, this will be the last time I see you because you ain't going to be allowed back up on this mountain."

Buckner did not leave a current telephone number with Tygart when he left.

Later, Tygart advertised in the newspapers for employees.

Buckman was not called back to work for Tygart.

# I

## Contentions Of The Parties

### Cross Motions For Partial and Full Summary Judgment

**Plaintiff**

Plaintiff contends he is entitled to summary judgment with respect to the issue of liability under his discrimination case (§1981 and W.Va. Code §5-11-1 et seq (2002)) (Count I) against his former employer because:

1) By its failure to respond to Plaintiff's first requests for admissions filed in the §1983 case Defendant has been deemed to have admitted or it is undisputed that:

    a) Anthony Buckner was Defendant's only African American employee during the relevant time period.

    b) Anthony Buckner was subjected to disparate treatment because of his race.

    c) Anthony Buckner was subjected to racial comments by his supervisor, Dennis Eisenacher.

    d) Plaintiff complained about racial epithets and demeaning comments to the Defendant's owner.

    e) Defendant did nothing to discipline the supervisor who made demeaning comments and racial epithets.

    f) Plaintiff was subject to tangible employment action as a result of racial discrimination such as:

        i. he did not receive the same bonus other employees received and

        ii. he was laid off from employment subsequent to the filing of the instant suit

and was not called back to work.

Plaintiff further contends Defendant is precluded from asserting the lack of tangible employment action because Defendant cannot prove by a preponderance of the evidence that:

a)     It exercised reasonable care to prevent and correct promptly any harassing behavior and

b)     Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm.

During  argument on Plaintiff's motion, Plaintiff withdrew his Second Motion for Partial Summary Judgment filed January 8, 2007 (Docket Entry 56).

**Defendant**

Defendant contends Plaintiff  "cannot possibly prove the forth [sic] element" of his racial discrimination claim because:

1)     The only racial comment that Plaintiff reported to Mr. Weese, Defendant's owner, was that Eisenacher was asking "about the Michael Jackson and Kobe Bryant cases";

2)     These comments about the Jackson and Bryant cases do not amount to racially derogatory comments;

3)     Plaintiff did not did not report racially derogatory comments made to him to Weese;

4)     Any comments made to Plaintiff were not sufficiently severe and pervasive to alter the conditions of his employment or create an abusive atmosphere; and

5)     There is no factual basis beyond Plaintiff's bare assertions to support his claim of a "tangible employment action."

Defendant further asserts Plaintiff's retaliatory discharge case fails because Plaintiff cannot

make a causal connection between the exercise of a protected activity (filing the §1981 discrimination in the workplace lawsuit) and Plaintiff's lay off which Defendant claims to be due to lack of work.

## Renewed Motions In Limine

### Plaintiff

Plaintiff seeks a court order excluding evidence Defendant may seek to introduce at trial which relates to alleged comments made by Plaintiff; arguments Defendant may attempt to make which are contrary to its admissions; and arguments relating to Plaintiff's purported misrepresentation made during the hiring process because:

a)      evidence that Plaintiff threatened to sue his employer during his employment is an effort to discredit Plaintiff in an effort to divert attention of the jury from the disparate treatment based on race that Plaintiff asserts has already been admitted by Defendant, in violation of FRE 402 and 403.

b)      evidence contrary to the factual assertions deemed admitted by Defendant is contrary to the language of the Court's Order which states "[t]his Court will not require proof of any of the information requested in the Plaintiff's Requests for Admissions at a trial in this matter."

c)      evidence of alleged misrepresentation of Plaintiff's prior work experience during the hiring process has no probative value under FRE 402 and any value it does have is outweighed by its prejudicial effect under FRE 403.

**II**
**Discussion**

**Summary Judgment §1981 Claim**

Summary judgment is appropriate "if there is no genuine issue of material fact. <u>Charbonnages de France v. Smith</u>, 597 F.2d 406 (4th Cir. 1979). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). This burden does not require the moving party to show evidence that proves absence of a genuine issue of material fact, but only to point out its absence. <u>Id</u>.

The burden then shifts to the party opposing the motion. The adverse party may not rest upon mere allegations or denials, <u>Anderson</u>, 477 U.S. at 248, and summary judgment is appropriate if the adverse party fails to show, under Rule 56, the existence of an element essential to that party's case. <u>Celotex</u>, 477 U.S. at 322. A mere scintilla of evidence supporting the case is insufficient. <u>Anderson</u>, 477 U.S. at 252. With regard to the burden on the adverse party, Rule 56(e) provides in part that:

> [W]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In evaluating a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson</u>, <u>supra</u> at 255. With these standards in mind, I will proceed to Defendants' motion.

To survive summary judgment or sustain a claim of §1981 discrimination based on a racially hostile work environment, the aggrieved employee must "demonstrate that harassment by immediate supervisor was 1) unwelcome; 2) based on race; 3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and that 4) there was some basis for imposing liability on employer." Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183-184 (4th Cir. 2001).

**Impact of Requests For Admission Deemed Admitted**:

Plaintiff disputes Defendant's right to challenge any of Plaintiff's assertions of discrimination. It is Plaintiff's position that Defendant has been deemed to have admitted each of the essential elements of a §1981 discrimination in the work place claim by virtue of Defendant's failure to respond to Plaintiff's First Requests For Admissions filed in the §1983 case. (Docket Entry 11).[5]

FRCivP 36(b) provides: "Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provision of Rule 16 governing amendment of a pre-trial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits."

_____

[5]

In the Amended Opinion, Report and Recommendation, I recommended Plaintiff's original §1983 claim be dismissed for failure to exhaust administrative remedies and that Plaintiff be permitted to file a §1981 claim because the essential elements of the two claims were the same and the statute of limitations on the §1981 claim had not run. I therefore consider the admissions made in the §1983 case binding on the Defendant in the §1981 case because: 1) they are admissions of fact applicable to either case and 2) the elements of the two claims are essentially the same. Defendant does not challenge use or application of its admissions made in the §1983 case based on any claim that the §1983 case was dismissed or is so different from a §1981 case that use or application is inappropriate.

Under Rule 36, the parties to litigation may request from their adversaries admissions regarding purely factual matters or the application of law to facts, but not matters of law. *See e.g.,* In re Carney, 258 F. 3d 415, 418 (5th Cir. 2001). The purpose of such admissions is to narrow the array of issues before the court, and thus expedite both the discovery process and the resolution of the litigation. *See e.g.,* In re Carney, 258 F. 3d at 419. This allows the parties to reduce the issues prior to trial and instead focus on matters of real dispute.

Accordingly, under the rule admissions in answer to a request from the other party stand in the same relation to the case as sworn testimony. Ark-Tenn Distributing Corp. v. Breidt, 110 F. Supp. 644, 646 (D.N.J. 1953).

Similarly, "[i]t is well established that failure to respond to requests for admission is deemed to be an admission of the matters set forth." WEVA Oil Corporation v. Belco Petroleum Corporation, 68 F.R.D. 663, 666 (NDWV, 1975)(internal citations omitted).

In the instant case, there is no dispute that Defendant did not respond to the Plaintiff's Requests for Admissions. The District Judge entered an Order dated May 5, 2005, ordering in pertinent part "that the Defendant, Tygart Valley Construction, Inc., has admitted all of the Requests for Admissions. This Court will not require proof of any of the information requested in the Plaintiff's Requests for Admissions at a trial in this matter." (Docket Entry 12).

In cannot be disputed that Defendant did not avail itself of the savings provision in FRCivP 36(b) by seeking leave to file late responses to the Plaintiff's requests for admission.

Default admissions that are not withdrawn or amended cannot be rebutted by affidavits entered in opposition to summary judgment nor can those admissions be ignored by the Court simply because it finds the evidence presented by the party against whom the admissions operated to be more

credible.  <u>American Auto. Ass'n v. AAA Legal Clinic</u>, 930 F. 2d 1117, 1120 (5th Cir. 1991).  The practical effect of Tygart's being deemed to have admitted Plaintiff's requests is to render the deposition testimonies of Weese and Eisenacher submitted stricken to the extent said deposition testimonies are inconsistent with Tygart's admissions.

In addition, because "[i]ssues change as a case develops, and the relevance of discovery responses is related to their context in the litigation," it may not be appropriate to accord conclusive effect to the admission, and the court has some discretion as to what scope and effect should be accorded to a party's admissions, particularly when those admissions, because of the requests, are subject to more than one interpretation.  <u>Rolscreen Co. v. Pella Prods. of St. Louis, Inc.</u>, 64 F.3d 1202, 1210 (8th Cir. 1995) and <u>Johnson v. DeSoto County Bd. of Comm'rs</u>, 204 F.3d 1355, 1341 (11th Cir. 2000).

Defendant, while not disputing that it failed to respond to the Requests for Admission or that those requests have been deemed admitted by Court order, does dispute the breadth of the deemed admissions.

Therefore, a review of the specific requests deemed admitted by the Court's order is appropriate.

Request 1:     Please admit that the Plaintiff, Anthony Buckner, was an employee of the Defendant, Tygart Valley Construction, Inc.

This request deemed admitted proves the following fact: 1) Plaintiff, Anthony Buckner,  was an employee of the Defendant, Tygart Valley Construction, Inc.

Request 2:     Please admit that the Plaintiff, Anthony Buckner, was laid-off by the Defendant Tygart Valley Construction, Inc., after the Plaintiff filed this lawsuit.

This request deemed admitted proves the following facts: 1) the Defendant laid Plaintiff off and 2) it further proves that the lay-off took place after Plaintiff filed the subject lawsuit.

Plaintiff would have the Court conclude that the deemed admission proves that Buckner was laid off by Defendant because he filed the within lawsuit against Defendant. Such an inference is beyond the actual facts deemed admitted. As suggested by the deposition testimony of Weese, it is possible that the lay off of Plaintiff came in the midst of a host of lay offs caused by the completion of work, lack of additional work and transition into the use of subcontractors (Docket Entry 61, p. 5 and p. 4). To that extent the testimony of Weese is not inconsistent with the admission. In addition to the admission requested, Plaintiff could have but did not ask Defendant to admit: Plaintiff, Anthony Buckner, was laid off by the Defendant, Tygart Valley Construction, Inc., because he [Buckner] filed this lawsuit. The request actually propounded by Plaintiff and now deemed admitted by Defendant is conclusive with respect to the factual timing of Plaintiff's lay off. It is not conclusive with respect to the reasoning or motivation behind his being laid off.

In addition, the admission does not prove, and no reasonable person could infer from the admission, that Plaintiff's lay off was racially motivated.

Request 3:     Please admit that the Plaintiff, Anthony Buckner, was a good employee who performed his work to the satisfaction of the Defendant, Tygart Valley Construction, Inc.

This request deemed admitted proves the facts 1) that Buckner was a good employee  2) who performed his work to the satisfaction of the Defendant. It proves nothing more. If relevant, it does not prove that Defendant did not think Buckner was as good a painter as he made himself out to be.

If relevant, it does not prove or disprove that Buckner had problems with money being deducted from his wages to pay child support and did not himself make racial slurs.

Request 4:     Please admit that the Plaintiff, Anthony Buckner, is African American.

This request deemed admitted proves the fact that Buckner is African American.

Request 5:     Please admit that the Plaintiff, Anthony Buckner, was the only African American employee of the Defendant, Tygart Valley Construction, Inc.

This request deemed admitted establishes precisely what it says: that Anthony Buckner was the only African American Employee of Tygart at the time of his employment.

Request 6:     Please admit that the Plaintiff, Anthony Buckner, was subjected to disparate treatment based upon his race.

This admission proves the following facts: 1) Buckner was disparately treated and the disparate treatment was because of his race. Plaintiff did not attempt to identify the specific disparate treatment in this request for admission. Plaintiff did not attempt to quantify the disparate treatment in this request for admission. Plaintiff did not attempt to establish the pervasiveness of the disparate treatment in this request for admission. Plaintiff did not attempt to connect the admitted disparate treatment to hostility in the work place or the danger, if any, to Plaintiff in the workplace environment.

Plaintiff would have the Court conclude from Defendant's admission of Request 6 that specific disparaging remarks alleged to have been made to Buckner by Eisenacher and foreman Johnny Fletcher were admitted, thereby preventing Defendant from challenging that they were made.[6]

---

[6]

Plaintiff argued that any favorable disparate treatment by Weese should be excluded as

15

Since "[t]he degree of hostility or abuse to which [Buckner] was exposed can only be determined by examining the totality of the circumstances, [r]elevant considerations 'may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' To be actionable, the conduct must create an objectively hostile or abusive work environment, and the victim must also perceive the environment to be abusive." Spriggs v. Diamond Auto Glass, *supra* at 184 (internal citations omitted). Under the Court's prior Order, Defendant may not deny that in some way Plaintiff was subjected to disparate treatment in the work place because of his race. The admission does not, however, prevent Defendant from disproving the specifics, the pervasiveness, the frequency, the severity of the disparate treatment and its lack of impact on Plaintiff's work performance.

Request 7:        Please admit that the Plaintiff, Anthony Buckner, reported the racial comments made by his supervisor, Dennis Isenknocker [sic], to the owner of the defendant, Tygart Valley Construction, Inc.

Again this request for admission is without assertion of specifics. According to the deposition testimony, Plaintiff asserts six specific racial comments or slurs made to him by supervisory personnel at work. Not one of them is specifically mentioned in the request for admission. In accord with the deposition testimony of Buckner, it must be concluded that the only comment or slur he

---

evidence of no disparate treatment and instead considered evidence of racial bias and discrimination. For instance, Plaintiff wants the Court to consider Weese's buying of work boots when Plaintiff showed up to work without any and Weese's twice loaning or advancing Plaintiff money to visit his ailing relative when the same courtesies were not extended to white workers as evidence of discrimination. While more favorable treatment of an employee because of his race may be evidence of discrimination, in the instant case, it does nothing to advance Plaintiff's cause of hostility or pervasiveness in the work place and may be relevant and admissible to disprove hostility or pervasiveness.

reported to Weese was that he was asked about the Kobe Bryant case. (Docket Entry 61, p. 15-18).

Contrary to the assertion of Plaintiff's counsel taken in the briefings and in Buckner's deposition, not one of the other five comments or slurs was reported by Buckner to Weese. (Docket Entry 61, p. 18). In light of the clear contradiction between the request deemed admitted and the Plaintiff's own sworn testimony, I conclude the admission is subject to more than one interpretation and, for purposes of this summary judgment motion, I further find the only comment or slur Buckner reported to Weese was that he was asked about the Kobe Bryant case.

Request 8: Please admit that the Defendant, Tygart Valley Construction, Inc., did not discipline its supervisor, Dennis Isenknocker [sic], based upon the racially derogatory comments he made to the Plaintiff, Anthony Buckner.

This admission request is not specific with respect to what racially derogatory comments were made by Eisenacher and for which Tygart should have disciplined him. The duty of the owner of Tygart is triggered by its knowledge of the alleged racial slurs and comments. It cannot be disputed that Defendant knew about the Kobe Bryant comment. It may even not be disputed that Defendant had some knowledge of the 9mm gang style pulling of a gun incident. However, what it knew, when it knew it and what, if anything, it did with the information or should have done with the information cannot be determined based on the deemed admission to Request 8 because Plaintiff did not make the request factually specific.

I am constrained by the request deemed admitted and cannot re-write it or interpret it based on the apparent conflict of fact as to whether Eisenacher did or did not make racial comments to Buckner. Buckner testified in his deposition that Eisenacher made the comments to him. The request deemed admitted refers to "racially derogatory comments." "[C]omments" is plural.

Accordingly, for purposes of this summary judgment motion, Defendant admitted it did not discipline Eisenacher for the racially derogatory comments he made to Buckner.

**Harassment that was unwelcome and based on race:**

With respect to the first two elements, in addition to the requests for admission deemed admitted by Defendant, Plaintiff has testified in his deposition that Dennis Eisenacher made the following comments to him in the presence of co-workers "Anthony, Gary Strange, Dennis Wegman, Jerry, the electrician." (Docket Entry 61, p. 24):

1) "I have a colored television and a black dog at home," implying that establishes he (Eisenacher) was not racially biased. Buckner does not know the exact date Eisenacher said this to him, but he thought it was "like four days after I started working there." (Docket Entry 61, p. 18).

2) It was stated [by Eisenacher] to Buckner "that an employee would wet your lips and stick you to the wall." Buckner does not remember the date this comment was made. (Docket Entry p. 61, 18-19).

3) "That an employee [Eisenacher] of Tygart Valley Construction put a hood over their head and pulled a 9 mm pistol in a gang member maneuver." (Docket Entry 61, p. 19).

4) "An employee [Eisenacher] of Tygart Valley Construction consistently asked you [Buckner] about the Michael Jackson case." (Docket Entry 61, p. 21).

5) "That an employee [Eisenacher] of Tygart Valley Construction discussed the Kobe Bryant case to you [Buckner]." (Docket Entry 61, p. 21).

6) "That an employee [Eisenacher] of Tygart Valley Construction stated you [Buckner]

were hired because of your race.  (Docket Entry 61, p. 22).

Plaintiff will also testify that Johnny Fletcher, Buckner's foreman at Tygart Valley Construction stated "you [Buckner] could kill people the way O.J. Simpson did."  (Docket Entry 61, p. 22).

Defendant will offer testimony that Plaintiff was not discriminated against.    (Docket Entry 61, p. 5).  Dennis Eisenacher has given deposition testimony denying that he made any of the comments attributed to him by Plaintiff. [7]  Two weeks after he was suspended without pay from his three year employment with Tygart pending a police investigation of theft of construction materials from the job site (Dep. p.  5-7), Eisenacher testified: that he did not have his 9 mm pistol out of his vehicle at the job site or point it at Buckner (Dep. p.  8, 15, 25); did not make any references to that pistol or about Buckner being involved in a gang because he was black  (Dep. p.  8, 25); did not hear anyone other than Anthony Buckner make any racially derogatory comments (Dep. p. 10); never heard any co-workers make any discriminatory or racially motivated comments toward Buckner (Dep. p. 14); did not ever hear co-workers joke about the Michael Jackson case and he did not ask Buckner about the Michael Jackson case (Dep. p. 14, 25); did not hear co-workers or other people mention the Kobe Bryant case or joke with or make comments to Buckner about the Kobe Bryant case and he did not ask Buckner about the Kobe Bryant case (Dep. p. 14, 25); did not himself make any kind of racially derogatory remarks toward Buckner (Dep. p. 15, 16); did not tell racially motivated jokes (Dep. p. 16); did not tell Buckner that he was lucky he was inside the car or the bear

---

[7]

During the hearing counsel for both parties agreed on the record that Eisenacher testified in his deposition that he did not make any of the alleged racially disparaging comments or statements that Buckner attributes to him.  A transcript of Eisenacher's July 22, 2005 deposition testimony was filed by Defendant as Exhibit 2 to its response to Plaintiff's first Motion for Summary Judgment.

would have some black meat even though he does recall a bear being in the back of a surveyor's truck on the job site prior to Buckner coming to work for Tygart (Dep. p. 16-18); was never told by Anthony Buckner or Ron Topper "that he had gone into another unit to eat lunch but he couldn't see Anthony Buckner because he was back in the corner and he was black" (Dep. p. 18); did not tell Anthony Buckner that he [Eisenacher] was not prejudiced or that he was not prejudiced because he had a colored TV and a black dog, although he did admit at one time having golden retrievers and at the time of his deposition not having any animals except for a parrot (Dep. p. 19, 29); did not tell Buckner that he [Buckner] "could kill somebody and because O.J. got away with it that he would too" (Dep. p. 19-20); did not tell Buckner "not to worry, that we all like blacks around here" (Dep. p. 22); did not ever tell Buckner that he [Eisenacher] "would wet his lips and stick him to the wall and that he would be there when you returned" (Dep. p. 25); and never told Buckner "the reason he was hired was because he is black" (Dep. p. 25).  (Docket Entry 35, Exhibit 2 Dep. p. 1-32).

Based on the foregoing, I find that there is no dispute of fact that Eisenacher and Fletcher were superintendent and foreman over Buckner in the work place. (Docket Entry 61, Dep. p. 22, 20) and (Docket Entry 35, Dep. p.24) and (Docket Entry 61, Dep. p. 10).

Based on the foregoing, I find an actual dispute of fact as to whether harassing statements alleged were made to Buckner by his supervisors.

However, for purposes of the pending Summary Judgment motion, I assume the seven (7) comments were made as testified to by Buckner in his deposition.  I further find  that a reasonable jury could infer from the content of the comments herein enumerated as 1, 2, 6 and 7 that they were racially motivated and unwelcome.  I further find that a reasonable jury could not infer that comments to Buckner about the Kobe Bryant case and the Michael Jackson case, whether isolated to one

occasion each or multiple occasions, without more, were racially motivated or unwelcome. Both cases were the topics of intense media coverage and public interest. Bryant's case was a public issue during the time period of Buckner's employment with Tygart.

**Sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere:**

By examining the totality of the circumstances "[t]he degree of hostility or abuse to which [Buckner] was exposed can be determined." Spriggs v. Diamond Auto Glass, *supra* at 184 citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). "Relevant considerations 'may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* "To be actionable, the conduct must create an objectively hostile or abusive work environment, and the victim must also perceive the environment to be abusive." Spriggs v. Diamond Auto Glass, *supra* at 184 citing Lissau v. Southern Food Serv., Inc., 159 F.3d 177, 183 (4th Cir. 1998) citing Harris.

According to the parties' argument, it is undisputed that Buckner worked for Tygart from September 17, 2003, until approximately December 2, 2004. (Docket Entry 61 p. 8). The seven previously enumerated statements attributed to Eisenacher and Fletcher by Buckner were allegedly made during this thirteen month period of time. Except for the colored television and black dog statement, Buckner either: 1) does not know or remember or did not state when the other six comments were made, or 2) was not asked during his deposition when they were made. (Docket Entry 61 p.18 and 19). The record before me for summary judgment does not suggest the number of times the seven statements were made or that any one of them, except perhaps discussion of the Kobe Bryant or Michael Jackson cases, occurred more than once. (Docket Entry 61).

The verbal comments made to Buckner at Tygart pale by comparison to those reported in Spriggs v. Diamond Auto Glass, *Id.* "Spriggs testified that he left Diamond the first time because of Stickell's incessant racial slurs, insults, and epithets." According to the record, Stickell "rarely hesitated to vilify anyone of African descent..." whether they were employees or customers. He called Diamond employees "n_____s or monkeys." Stickell's own wife was African American and he referred to her as a "black bitch" in Sprigg's presence. During telephone calls with his wife, Stickell would become enraged and would "fly into a barrage of racial obscenities towards her and slam the phone down. She would call back. Once again, she was a no-good nasty bitch. It was continuous daily." After being convinced to return to work under his employer's promise to hold Stickell in check, in addition to being subjected to Stickell's routine of making racially derogatory comments about his wife, Spriggs was subjected to Stickell habitually calling him a "monkey," "dumb monkey," and "n____r." On one occasion Stickell placed the picture of a monkey in the pages of a NAG book used by Spriggs at work and captioned the picture with X's and O's and noted "so you'll never forget who you are." Spriggs again walked out on his job. When he attempted to return, Stickell blocked his entrance. Other company officials became involved and Spriggs agreed to return to work. When he did, Stickell presented him with a list of job duties Spriggs believed were onerous and racially motivated. He quit and brought suit. Spriggs v. Diamond Auto Glass, *Id.*

The test is not s comparison of one set of facts against another set of facts. Instead, the determination of whether an environment is hostile or abusive is made only "by looking at all the circumstances." Spriggs v. Diamond Auto Glass, *Id.* Those circumstances may include the a) frequency of the discriminatory conduct; b) its severity; c) whether it is physically threatening or humiliating or a mere offensive utterance; and d) whether it unreasonably interferes with an

employee's work performance. The e) effect on the employee's psychological well-being is relevant in determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required. Harris v. Forklift Systems, Inc., 510 U.S. 17, 114 S.Ct. 367, 369 (1993). Similarly, the presence of a f) direct economic impact may be some evidence supportive of a hostile work environment. However, the converse is not true. The absence of an economic impact on the Plaintiff does not negate the claim of a hostile work environment.

**a. Frequency**

Eisenacher's denial of making racial comments towards Buckner also denies the frequency with which they were allegedly made. The deemed admissions are not determinative of frequency. Accordingly, I find that there is an actual dispute of fact with respect to how frequent any such racial comments were made to Buckner during his employment with Tygart. However, even taking Buckner's own testimony in the light most favorable to him, for purposes of this summary judgment motion, I do not find that the seven comments enumerated herein were made with frequency.

**b. Severity d. Unreasonably interferes with work performance e. Psychological well-being**

A review of the entirety of Buckner's deposition does not reveal a single instance of his leaving work or not going to work to avoid the alleged racial comments. There is not one instance of an argument or altercation, threatened or actual, as a result of the alleged racial comments. Buckner admits he did not report any of the alleged racial comments to Weese until after Weese learned Buckner was going to sue and came to him [Buckner] to find out why. (Docket Entry 61, Dep. p. 18, 19, 20, 21, 22 and 23). There is no evidence of any kind that Buckner walked off the job due to any of the alleged statements or comments at any time during his thirteen months of

employment.  There is not any evidence of Buckner not being able to perform the duties of his job as a result of the alleged statements or comments.  Weese characterized Buckner as a good worker.

One of the requests for admission deemed admitted by the District Judge's Order was "that the Plaintiff, Anthony Buckner, was a good employee who performed his work to the satisfaction of the Defendant, Tygart Valley Construction, Inc."  Buckner complained to Weese and others when his pay was short based on mistaken reporting of the days he worked during deer season and when too much child support was removed pursuant to a garnishment process.  However, none of those pay disputes had anything to do with claimed racial discrimination.  (Docket Entry 61, Dep. p. 12-15)(Docket Entry 35, Dep. p. 11).  The record before me is void of any evidence of Buckner suffering any emotional distress as a result of the alleged racial comments, or unreasonable interference with his work performance.[8]

Accordingly, I find that there is no disputed question of fact with respect to and that the severity of the alleged racial comments did not affect conditions of Buckner's employment and create an abusive atmosphere.  For the purposes of recommending a decision on this summary judgment motion, Buckner's failure to file an affidavit or offer evidence (other than his deposition testimony, which I considered), left me with no recourse but to consider the deposition testimonies of Weese and Eisenacher, insofar as each was not inconsistent with the facts deemed admitted.  Anderson, *supra* at 522 and F.R.Civ.P. 56(e).

---

[8]A check of the entire record reveals that there is no statement of emotional distress or upset in any of the depositions including but not limited to Buckner's and there is no affidavit filed in response to Defendant's motion for summary judgment and there is no disclosure by plaintiff of any treating Doctor, Psychologist or Psychiatrist or any expert witness with respect to emotional, psychological or physical injuries.  The record also discloses that no medical or psychological records are listed as exhibits.  (Docket Entry 67-Plaintiff's Final Witness and Exhibit List)

### c. Physically threatening

There is not a single instance in Buckner's deposition testimony where he says he was physically threatened or humiliated  or he felt himself to be physically threatened or humiliated because of the alleged discriminatory conduct at Tygart.  Buckner does say that Eisenacher put a hood over his head and pulled out his 9 mm pistol in a gang member maneuver.  He does not say that the pistol was pointed at him or in his direction.  He does not state that he was afraid when the pistol was produced by Eisenacher.  He does not say he was embarrassed or humiliated by the pulling of the pistol.  He did not describe any emotional response he may have had as a result of this or any other of the alleged discriminatory acts or statements he attributes to Eisenacher or any other employee, supervisor or foreman at Tygart.  It is true that Plaintiff's counsel, while questioning Eisenacher asked: "Did you ever put up your hood and pull out a 9 millimeter pistol and point it at Anthony Buckner?"  Eisenacher responded: "No, I did not."  (Docket Entry 35, Dep. p. 25). Counsel's question does not create a fact in evidence.  There is simply no evidence in the record to establish that there was any discriminatory conduct that was physically threatening or humiliating. Based on the record before me I find that Buckner has failed to establish he was subjected  to any physically threatening or humiliating discriminatory conduct while employed by Tygart.

### f. Economic impact

Buckner complains that he did not get a bonus when other employees did.  Weese, as owner of Tygart, explained that the bonus was to loggers for one log building and was not paid to non-logger employees of Tygart.   There is no dispute of fact that Buckner did not receive the bonus.  The motive or reasoning behind his failure to get a bonus is also not factually disputed.  Buckner offers no facts to counter Weese's statement that the reason Buckner did not get the bonus was that it was

paid to loggers on completion of a job and Buckner was not one of the loggers.[9]

Buckner complains there was a plan to get rid of him.   Buckner does not directly state that the plan to get rid of him was racially motivated.  He implies it may have been in retaliation for filing the instant lawsuit.  Yet he admits that Weese told him  "that I was being laid off because he was downsizing, that he was subcontracting."  (Docket Entry 61, Dep. p. 12).  He further admits that when he was laid off in December, of the eight units at Logger's Run on which they had been working , four had been completed and that his ride, Dennis Wegman, and a drywall finisher had already been laid off. (Docket Entry 61, Dep. p. 12-13).  Plaintiff testified Dennis Wegman told him that if Wegman is laid off and it's Tony's ride, that means Tony can't get to Snowshoe implying Wegman was laid off was to get rid of Buckner.  However, when he was asked if Wegman told him who told Wegman that, Buckner responded: " No.  He didn't tell me who told him that, but it's obvious." (Docket Entry 61, Dep. p. 25).  Plaintiff confronted Weese regarding whether he was being laid off because Wegman was being laid off.  According to Buckner, Weese told him "No, just Dennis is being laid off.  You're not being laid off."  (Docket Entry 61, Dep. p. 26).  Buckner offers nothing more, no affidavit or testimony, to support his conclusion and suspicion that "[I]t's obvious" that Wegman was laid off to get rid of him, or to contradict the testimony of Weese.  Buckner admits he continued to work and ride with someone else (Larry) for a period of approximately two weeks

---

[9]

During Buckner's deposition, Plaintiff's counsel initiated an inquiry into the bonus.  (Docket Entry 61, p. 29-30).  In spite of Plaintiff explaining that the non-payment of the bonus came after he filed this lawsuit making the matter ripe for discussion under the retaliatory discharge count of his complaint and Defense Counsel stating "Go ahead", counsel for Plaintiff elected to not explore the bonus issue further saying: "That's all right.  You know what, that's fine.  If she doesn't want to get into that, we won't get into that.  We'll do that at trial."  As previously stated, no affidavit was submitted by Plaintiff with respect to any issue raised by Defendant's Motion for Summary Judgment including, but not limited to, the issue of the bonus.

after Wegman's lay off. (Docket Entry 61, Dep. p. 26). Moreover, Weese testified in his deposition that: "I was walking around and seeing that we were coming to the end of our project and I laid off several people before Anthony, and then I laid off I think three guys that same day that I laid Anthony off, two or three guys. We were just coming to the end of the project and was no longer needing laborers and some carpenters." With respect to the lay off of Wegman, Weese testified: "He was laid off with the seven or eight guys before Tony. There were seven or eight guys laid off, and he was in the first bunch, and then Tony and David King or two or three others were gone in the second bunch." (Docket Entry 61, Dep. p. 35).

It cannot be disputed that all eight of those workers were non-African American, because Buckner was the only African American employee at Tygart. It is also without dispute that Buckner was one of three employees laid off in the second wave and, again, the other two were non- African American. Weese contends the layoffs were the result of the company having completed four of eight projects, the increased use of subcontract labor, and the lack of future work. (Docket Entry 61, Dep. p. 8-9). This assertion is supported by the staging of the layoffs.

Buckner asserts that, at the outset of his employment with Tygart, Weese had told him he would always have a job. (Docket Entry 61, Dep. p. 26). He also asserts that a fellow employee (Larry, a foreman) told him he would not again be allowed on the hill, implying Buckner would not be brought back to work for Tygart. (Docket Entry 61, Dep. p. 28). Such assertions go to retaliation for filing the subject lawsuit. They do not establish that the layoff or the failure to call Buckner was not returned to work in the next construction season was racially motivated. There is no factual proof or inference that can reasonably be derived from the facts now before the Court to support a finding that Buckner's lay off in December 2004, or that his not being called back to work was racially

motivated.  To find otherwise, based on the evidence of record before me, would require rank conjecture and speculation.

There is evidence that Buckner started out as a painter but was later moved to labor.  Buckner implies in his argument that the move to labor was motivated by his race.  To the contrary, Weese testified that the painters did not feel that Buckner painted to the standards of a painter and did not want him working with them for that reason.   Buckner offers nothing to rebut Weese's testimony.

Except for Eisenacher and Fletcher, no evidence is offered that any other employees or supervisors of Tygart Valley Construction, Inc.,   made racially derogatory comments to Buckner or in his presence during his tenure with Tygart.

> Of course, as the courts in both *Rogers* and *Henson* recognized, not all workplace conduct that may be described as "harassment" affects a "term, condition, or privilege" of employment within the meaning of Title VII. See *Rogers v. EEOC, supra,* at 238 ("mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee" would not affect the conditions of employment to sufficiently significant degree to violate Title VII); *Henson,* 682 F.2d, at 904 (quoting same). For sexual harassment to be actionable, it must be sufficiently severe or pervasive "to alter the conditions of [the victim's] employment and create an abusive working environment." *Ibid.* Respondent's allegations in this case-which include not only pervasive harassment but  also criminal conduct of the most serious nature-are plainly sufficient to state a claim for "hostile environment" sexual harassment.

Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 106 S.Ct. 2399, 2405-2406 (1986).

Buckner's subjective belief that the circumstances surrounding his employment as discussed above is similar to the subjective claims of the sanitation workers who sued claiming disparate treatment in compensation in White v. BFI Waste Services, LLC, 375 F.3d 288 (4th Cir. 2004).  There, in an "overwhelming majority of instances in which Gaskins' and White's pay codes were changed, they were changed because Gaskins or White had themselves put down a better pay code than the one that the computer had already generated."   The record reflected that the computer

generated a presumptively appropriate pay code for runs made and the employees, black and white alike, changed the computer generated code to a higher pay codes. The impressions of the Plaintiffs (Gaskins and White) were that black employees' pay codes were being altered in a discriminatory manner. They testified that supervisors stated they "do not like the blacks to make more than the whites" and made comments to the effect that because black drivers were making too much money, they were going to have to cut back.

I recognize that "[e]mployers are generally presumed to be liable for hostile work environment harassment committed by supervisory employees." *Id.* at 298.

I recognize that "one does not need to sacrifice one's job (and a steady source of income) in order to prove that racial harassment in the workplace rose to the level of an actionable hostile work environment." *Id.* at 298.

I recognize that the fact that Buckner was never physically threatened does not defeat his hostile work environment claim. The mere use of some "words are so offensive that when uttered repeatedly, they can foster 'an abusive working environment' even if they are not accompanied by threat of physical injury." *Id.* The distinction in the instant case is that the racial slurs prevalent and uttered repeatedly in Spriggs are absent from Buckner. Words and phrases such as: "n____r" and "monkey" were never used with respect to Buckner. His appearance was never compared to the caricature of a jungle beast. I can find no basis in the record of this case to conclude that Buckner was subjected to "frequent and highly repugnant insults" that were "sufficiently severe or pervasive (or both) to cause a person of ordinary sensibilities to perceive that the work atmosphere was racially hostile." *Id.* at 297 citing Spriggs v. Diamond Auto Glass. Isolated incidents of abusive language will generally not meet the requisite threshold of severity or pervasiveness. Faragher v. City of Boca

Raton, 524 U.S. 775, 788 (1998). I find nothing in the racial context of Buckner's claim in this case from which any reasonable juror could conclude that the Tygart work place was "so polluted with [racial or age] harassment that it altered the terms and conditions of [his] employment." Anderson v. G.D.C., Inc., 281 F.3d 452, 458-459 (4th Cir. 2002).

Nothing in this Opinion, Report and Recommendation should be construed that I, or the Court in which I sit, condones racially motivated and/or disparaging comments. Employees and employers alike should be sensitive to how their language will be perceived by others in the work force. That having been said, the law does not recognize every slight or disparaging comment as actionable.

Based on the foregoing analysis of the totality of the circumstances and taking the evidence in the light most favorable to Buckner, I conclude that the alleged racially motivated statements, while subjectively significant to Buckner, objectively were not sufficiently severe or pervasive to alter the conditions of his employment and did not create an abusive atmosphere in his employment. Von Gunten v. Maryland, 243 F.3d 858, 870 (4th Cirl 2001.

**Summary Judgment Retaliatory Discharge Claim**

In the absence of direct evidence of retaliation, the aggrieved may utilize the McDonnel Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) framework to prove his claim of retaliation. Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989). Under the McDonnel Douglas Corp. v. Green framework, the aggrieved must first establish a prima facie case of retaliation. Once a prima facie case is established, the burden shifts to the employer to establish a legitimate non-retaliatory reason for its action. "If the employer sets forth a legitimate, non-retaliatory explanation" for its employment action, the aggrieved employee must show that the employer's explanation is pretextual or his claim of retaliatory discharge will fail. Plaintiff may

show pretext by showing that the employer's "explanation is 'unworthy of credence' or by offering other forms of circumstantial evidence sufficiently probative of [retaliation]." <u>Price v. Thompson</u>, 380 F.3d 209, 212 (4th Cir. 2004) citing <u>Mereish v. Walker</u>, 359 F.3d 330, 336 (4th Cir. 2004).

### a. Prima facie case of retaliation

Three elements are required in the process of establishing a prima facie case of retaliation: 1) Buckner must show that he engaged in a protected activity; 2) Buckner must show that Tygart took adverse action against him; and 3) Buckner must show that a causal relationship between the protected activity and the adverse action exists. *Id.* citing <u>King v. Rumsfeld</u>, 328 F.3d 145, 150-151 (4th Cir.), *cert. denied* , 540 U.S. 1073, 124 S.Ct. 922, 157 L.Ed2d 742 (2003).

In the instant case, it is not disputed that Buckner decided to file a discrimination in the workplace complaint in the Courts. It is also not disputed that word of Buckner's decision to sue leaked out and was known by Weese prior to Tygart's start of employee lay offs in November 2004. Weese admits he went to Buckner and asked him why he was suing the company and that Buckner then told him about the Kobe Bryant case comment or comments. While it is unclear from the record exactly when the conversation between Weese and Buckner took place, contextually it appears to have occurred within weeks of Buckner's December 2004, lay off. From a timing standpoint, the adverse employment action suffered by Buckner is similar to that in <u>King v. Rumsfeld</u>, 328 F.3d 145, 151 (4th Cir. 2003), wherein the Court stated: "Here, King's filing of the EEO complaint was protected activity, and his termination indisputably constituted adverse employment action. Moreover, that his termination came so close upon his filing of the complaint gives rise to a sufficient inference of causation to satisfy the prima facie requirement. *See id.* ('Appellant's proof of a causal connection between the protected activity and her discharge was that she was fired after her employer

became aware that she had filed a discrimination charge.  While this proof far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality.').”

Buckner's filing of a discrimination in the workplace suit constitutes a protected activity. Being laid off from employment by Tygart within a couple to a few weeks after its owner, Weese, learned of Buckner's intent to sue, albeit weak, is sufficient to satisfy the first prong of the <u>McDonnel Douglas Corp. v. Green</u> framework.

**b.  Legitimate non-retaliatory reason**

The burden now shifts to the employer, Tygart, to establish a legitimate non-retaliatory reason for its layoff of Buckner.  If this burden is satisfied, the presumption of discrimination created by the prima facie case disappear.  <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248, 255 (1981).  The employer is not required to persuade the court that the proffered reason was the actual motivation for the employment decision.  It must “merely articulate a justification that is ‘legally sufficient to justify a judgment’” in its favor.  *Id.*

Tygart laid off eight workers in late November 2004.  It is undisputed that all of those workers laid off were white.  Tygart, by Weese, explained the lay offs became necessary as four of eight construction projects had been completed, the construction season in the area was coming to an end, and the company had begun using more subcontractors to complete specific work reducing the need for laborers.   Tygart laid off three more workers in early December 2004.  Buckner was one of the three workers laid off.  Buckner was a laborer at the time of his layoff.  Buckner does not dispute these facts.

Based on the evidence (depositions of Buckner, Weese, Eisenacher and the deemed admitted

requests for admission) taken in the light most favorable to Buckner, I find the stated business decision to lay off workers who were not needed is a legitimate non-retaliatory reason for Tygart's layoff of Buckner.

**c. Employer's explanation is pretextual**

The burden shifts back to the Plaintiff to establish that the employer's reasons are pretextual. He must be able to show Defendant's "explanation is 'unworthy of credence' or by offering other forms of circumstantial evidence sufficiently probative of retaliation." Price v. Thompson, *supra* at 212. Buckner asserts that four additional facts establish that Defendant's business reason for laying him off was pretextual: 1) Tygart laid off Buckner's ride in the first round of lay offs in order to get rid of Buckner; 2) Buckner's ride told him that he was being laid off to get rid of Buckner; 3) the foreman, Larry LNU, told Buckner on the last day of work, December 2, 2004, that Buckner would not be allowed back on the mountain; 4) and Weese had told Buckner at the beginning of his employment with Tygart that he would always have a job. None of these facts individually or in conjunction with each other establishes that Tygart's proffered explanation for the November and December 2004 lay offs is false or unworthy of credence. To draw such a conclusion requires me to believe Tygart was willing to lay off approximately 1/4 of its work force, eleven (11) employees, only one of which was African American, in order to get rid of Buckner. There is simply no evidence to support such a finding and no rational trier of the facts could reach such a conclusion. In reviewing the employer's stated reason for a reduction in force, the Court "does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination...." DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998)(internal citations omitted). See also Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir.

1986): " this Court will not act as a super-personnel department that reexamines an entity's business decisions." The law is not "intended to obstruct the ability of a commercial enterprise to make necessary adjustments in the face of economic challenges." Birbeck v. Marvel Lighting Corp., 30 F.3d 507, 513 (4th Cir. 1994).

Plaintiff would have the Court believe that he was not called back to work when the construction season started back up in the Spring of 2005. However, Plaintiff does not dispute the evidence, some of which he provided, that he did not leave a current telephone number with the employer when he was laid off on December 2, 2004; he did not call the employer to check on available work after he was laid off; Tygart did hire people as employees after the lay offs of November and December 2004, but it advertised the open positions in the local newspaper and did not call or write to any of the employees it had laid off to see if they wanted to return to work. Again there is not a shred of evidence to support Buckner's speculation that the reason behind his not being called back to work was because he had filed the discrimination lawsuit.

As in Beall v. Abbott Laboratories, 130 F.3d 614, 620 (4th Cir. 1997), Buckner has not shown that Tygart's need for a reduction in force was pretextual or that Tygart applied the reduction in force with a retaliatory motive.

Buckner has not offered any probative evidence "that the employer's explanation was false." Accordingly, he is unable to avail himself of Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, at 148 120 S.Ct. 2097, 147 L.E.2d 105 (2000), which held: "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."

34

**Plaintiff's Motions In Limine**

Plaintiff's request that Defendant not be permitted to introduce "evidence that Plaintiff threatened to sue his employer during his employment [because it is] an effort to discredit Plaintiff in an effort to divert attention of the jury from the disparate treatment based on race that Plaintiff asserts has already been admitted by Defendant in violation of FRE 402 and 403" should be denied. First, the admission on which the motion is based was deemed admitted in the context of the §1983 case which was dismissed. Thereafter, Plaintiff was permitted to file an amended complaint, which he did. In his amended complaint he asserted a §1981 case and, for the first time, asserted the retaliatory discharge claim. The essence of the retaliatory discharge claim is that Plaintiff was laid off because he filed the discrimination claim, a protected activity. Second, my recommended disposition of the retaliatory discharge claim and the §1981 claim, if adopted, renders Plaintiff's motion moot.

Plaintiff's request that Defendant not be permitted to introduce "evidence contrary to the factual assertions deemed admitted by Defendant [because to do so is] contrary to the language of the Court's Order which states "[t]his Court will not require proof of any of the information requested in the Plaintiff's requests for admissions at a trial in this matter" should be denied. First, as previously stated, certain of Plaintiff's requests for admissions were not specific and were subject to differing interpretations necessitating evidence to reach elements of the claims and defenses not specifically contemplated by the request and the deemed admission thereof. Second, my recommended disposition of the retaliatory discharge claim and the §1981 claim, if adopted, renders Plaintiff's motion moot. To the extent that the Court, on review, would not adopt all or any portion of the herein recommended dispositions, those admissions that have been noted to be specific and not

subject to differing interpretations do not require additional proof, and Defendant should not be permitted to offer any proof that is contrary to the admission.

Plaintiff's request that Defendant not be permitted to introduce "evidence of alleged misrepresentation of Plaintiff's prior work experience during the hiring process has no probative value under FRE 402 and any value it does have is outweighed by its prejudicial effect under FRE 403." My recommended disposition of the retaliatory discharge claim and the §1981 claim, if adopted, renders Plaintiff's motion moot. However, to the extent that the Court, on review, would not adopt all or any portion of the herein recommended dispositions, Plaintiff's representations relating to his prior work experience during the hiring process have no relevance to the issues raised by the §1981 claim or the retaliatory discharge claim and should be excluded.

### Recommendation

For the reasons stated herein, I **RECOMMEND**:

1) Plaintiff's Second Motion for Partial Summary Judgment filed January 8, 2007, (Docket Entry 56) be **DENIED** as having been withdrawn by counsel for Plaintiff during the argument.

2) Defendant's Motion for Summary Judgment (Docket Entry 57, 60 and 63) be **GRANTED**.

3) Plaintiff's Renewed Motions in Limine filed February 13, 2007 (Docket Entry 70 renewing Docket Entries 29, 30 and 31) be **DENIED** as having been rendered moot by the within recommended dispositions of the retaliatory discharge claim and the §1981 claim or, in the alternative, if the Court does not adopt the herein recommended dispositions, that Plaintiff's Renewed Motions in Limine filed February 13, 2007, (Docket Entry 70 renewing Docket Entries 29, 30 and 31) be Granted in Part and Denied in Part as herein recommended.

Any party may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation. 28 U.S.C. § 636(b)(1); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert</u>. <u>denied</u>, 467 U.S. 1208 (1984); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

The District Clerk for the United States District Court for the Northern District of West Virginia is directed to provide a copy of this order to all counsel of record.

DATED: March 15, 2007

/s *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE